CITY OF PROVIDENCE *vs*. ANTHONY STEPHENS *et al*.

JUNE 11, 1926.

PRESENT: Sweetland, C. J., Rathbun, Sweeney, and Barrows, JJ.

*(1)   Zoning Law.   Constitutional Law.*

Pub. Laws, 1921, cap. 2069, sec. 1, (Gen. Laws, 1923, cap. 57, sec. 1,) amended by revised Public Laws, 1923, cap. 430, sec. 1, enacts a zoning law under which the city council of Providence enacted a zoning ordinance, dividing the city into five classes of so-called "use districts". The ordinance provides in regard to "dwelling house districts" that no building shall be used for other than certain purposes, which include a "dwelling" but do not include an "apartment house". The ordinance defined a "dwelling" as a building arranged, intended or designed to be occupied by not more than two families living independently of each other. An "apartment house" is defined as "a building arranged, intended, or designed to be occupied by three or more families living independently of each other".

On the question of the constitutionality of the act:—

*Held*, that Cons. R. I. Art. I, sec. 10, had no application as the section applied only in favor of persons accused of crime.

*(2)   Zoning Law.   Constitutional Law.*

Zoning provisions interfere with and restrict the property rights of land owners and can be supported only when they represent a legitimate exercise of the police power of the State. If they go beyond the reasonable limits of that power they properly may be held to violate Art. XIV, amend. sec. 1 of the federal constitution and to represent a taking of private property for public use without compensation in disregard of Art. I, sec. 16 of the State constitution.

*(3)   Zoning Law.   Constitutional Law.*

The Zoning Act among other things authorizes cities to regulate and restrict the location and use of buildings, structures and land for trade, industry, residence or other purposes and authorizes the division of a municipality into districts to carry out the purpose of the act.

*Held*, that the separation of business, in the sense of trade, and the industrial activities of a city from its residential portions is a provision which reasonably administered may be supported in behalf of public safety, public health, comfort and convenience.

*Held*, further, that it was the intent of the legislature to authorize the establishment of residential districts in which only dwellings for one or two families should be permitted and from which apartment houses should be excluded.

*Held*, further that such authority granted to the cities was within the power of the legislature, for "if a state of facts could exist which would justify legislation it is to be presumed that it did exist".

*(4)   Zoning Law.   Constitutional Law.   Burden of Proof.*

The burden is on him who attacks the constitutionality of a provision of the legislature to establish beyond a reasonable doubt that the provision has no just relation to a legitimate exercise of the legislative power.

*(5)   Zoning Law.   Constitutional Law.   Ordinance under Authority of Statute.*

The court having found that the zoning act in so far as it has relation to the matters involved in the instant case is not in violation of provisions of the federal and State constitutions will not consider the reasonableness and validity of the zoning ordinance of the city, as it relates to the premises affected, but the legislature having delegated its police power in this matter to the city, the lower court after giving due consideration to the discretion which has been placed in the city council will pass upon the reasonableness of the exercise of that power as it affects the property in question upon the facts presented.

BILL IN EQUITY seeking to restrain violation of zoning ordinance.   Certified on constitutional questions.

SWEETLAND, C. J.   The above entitled cause is a bill in equity seeking to restrain the respondent Stephens from the continued violation of the zoning ordinance of the city of Providence.   It is before us at this time upon certification of the question of the constitutionality of the act of the General Assembly entitled, "An act authorizing cities to enact zoning ordinances".

Section 1, Chapter 2069, Public Laws 1921, which became Section 1, Chapter 57, General Laws 1923, later amended by Section 1, Chapter 430, Revised Public Laws 1923, provides among other things as follows:   "Section 1.   For the purpose of promoting health, safety, morals or general welfare, the city council of any city and the representative council of the city of Newport shall have power in accordance with the provisions of this chapter within the limits of such city by ordinance to regulate and restrict  .  .  . the location and use of buildings, structures and land for trade, industry, residence or other purposes.   For any and all of said purposes said city council or representative council may divide the municipality into districts of such number, shape and area as it may deem best suited to carry out the purposes of this chapter;   and within such districts

it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of buildings throughout each district but the regulations in one district may differ from those in other districts."

Under the authority so conferred the city council of Providence enacted a zoning ordinance dividing the city of Providence into five classes of so-called "use districts" termed respectively, dwelling house, apartment house, business, first industrial and second industrial.

The respondent Anthony Stephens is the owner of the house numbered 54 on Halsey street in Providence, which house is located in what is designated in the zoning ordinance and delineated upon the zoning map which is made a part of the ordinance, as a dwelling house district. It is provided that in such district no building shall be used and no building shall be erected which is designed to be used for other than certain purposes designated in the ordinance. Those purposes include a "dwelling", but do not include an "apartment house". A "dwelling" is defined in the ordinance as "a building arranged, intended or designed to be occupied by not more than two families living independently of each other". An "apartment house" is defined as "a building arranged, intended or designed to be occupied by three or more families living independently of each other".

It is alleged in the bill substantially as follows: After the enactment of the ordinance the respondent Stephens on April 22, 1924, obtained from the inspector of buildings of Providence permission to alter the house at 54 Halsey street into a two-tenement dwelling. In violation of the ordinance the house is now being used and occupied by five families living independently of each other. This suit was commenced in the Superior Court in reliance upon the provisions of Section 4, Chapter 57, General Laws 1923, giving jurisdiction to that court to restrain the use of any building in violation of the provisions of any zoning ordinance.

In the thirteenth paragraph of the amended answer the constitutionality of Chapter 2069, Public Laws 1921, is questioned if it authorizes the city of Providence to restrict the use of the premises at 54 Halsey street to the occupancy of not more than two families. The Superior Court has certified the cause on the question of the constitutionality of Chapter 2069, Public Laws 1921. Although questioned in a somewhat uncertain and conditional form we shall, in accordance with the contention of the complainant, treat the certification as bringing before us an attack upon the constitutionality of the act of the General Assembly authorizing the enactment of zoning ordinances. Some confusion is raised in the bill, the answer and the order of certification by reason of the references to the enabling act under which the zoning ordinance of Providence was enacted. The original act, authorizing zoning in the cities was Chapter 2069, Public Laws 1921. This became Chapter 57 in the Revision of General Laws, 1923, and Section 1, which is the portion of the act conferring the power to make such ordinances was materially amended by Section 1, Chapter 430 of the Revised Public Laws of 1923. The zoning ordinance of Providence is Chapter 370 of the Ordinances of that city, approved June 6, 1923, as amended by Chapter 385 of the Ordinances approved November 19, 1923, and hence enacted under the authority conferred by Chapter 57, General Laws, 1923, as amended by Chapter 430, of the Revised Public Laws 1923.

The claims of unconstitutionality set forth in the respondent's answer are that the act violates the due process and the equal protection provisions of Article XIV of Amendments to the Constitution of the United States; that it violates Article I, Section 10 of the Constitution of Rhode Island; and that it authorizes the taking of the respondent's property for public use without just compensation being paid therefor in violation of Article I, Section 16 of the Constitution of Rhode Island.

(1) Article I, Section 10 of the Constitution of Rhode Island has no application in this proceeding. It has been repeatedly

held by this court that the section applies only in favor of persons accused of crime. *State* v. *Keeran*, 5 R. I. 497; *East Shore Land Co.* v. *Peckham*, 33 R. I. 541; *Joslin Mfg. Co.* v. *Clarke*, 41 R. I. 350.

Zoning provisions interfere with and restrict the property rights of land owners and can be supported only when they represent a legitimate exercise of the police power of the state. If they go beyond the reasonable limits of that power they properly may be held to violate Article XIV, amend. Section 1, of the Federal Constitution, and to represent a taking of private property for public use without compensation in disregard of Article I, Section 16 of the State constitution.

(2)

The justices of this court have said that the police power "is indefinable, because none can foresee the ever changing conditions which may call for its exercise". *Opinion to the Governor*, 24 R. I. 603. It is plain from the course of legislation and the opinions of the courts of the country that in recent years there has been a considerable extension of the application of the police power to new subjects of legislation. It is the duty of courts while recognizing the wide scope of legislative discretion to see that the law-making power, in response to some popular demand or the insistence of an aggressive minority, does not unwarrantably encroach upon private rights under the claim of an exercise of the police power. In *Penn. Coal Co.* v. *Mahon*, 260 U. S. 393, 416, the supreme court, speaking through Mr. Justice Holmes, said: "We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."

Zoning legislation is one of the latest examples of the interference with private rights upon the claim of a promotion of what is rather indefinitely termed the general welfare. We will consider whether the Rhode Island act authorizing the cities to impose zoning regulations, in so far as it relates to the particular matter involved in the suit at bar, has such

a substantial relation to the promotion of the public safety, health and the common good of the community that it should be sustained as a rational exercise of the police power. The act, among other things, authorizes the city to regulate and restrict by ordinance "the location and use of buildings, structures and land for trade, industry, residence or other purposes," and further authorizes the division of a muni-cipality into districts to carry out the purpose of the act. It appears to us that the separation of business, in the sense of trade, and the industrial activities of a city from its residential portions is a provision, which, if reasonably (3) administered, may be supported in behalf of public safety, public health, comfort and convenience. This view, although it appears to us to be supported by the weight of authority, has been disapproved in a number of carefully considered opinions. That without violation of constitutional provisions there may be an exclusion of trade and industry from the residential portion of urban communities has been held in, *Opinion of the Justices,* 234 Mass. 597; *Inspector of Buildings* v. *Stoklosa,* 250 Mass. 52; *Spector* v. *Building Inspector,* 250 Mass. 63; *Lincoln Trust Co.* v. *Williams Building Corp.* 229 N. Y. 313; *Ware* v. *Wichita,* 113 Kan. 153; *State* v. *Harper,* 182 Wis. 148. There are a number of other cases which clearly approve this principle. We shall cite them below with reference to the separation of the residential sections of a city into dwelling house and apartment house districts. Zoning regulations which prohibit, in a residential district, business of a lawful character, usually considered harmless, have been declared void in *Ignaciunas* v. *Risley,* 98 N. J. L. 712; *Mayor* v. *Turk,* (Del.) 129 Atl. 512; *Spann* v. *Dallas,* 111 Tex. 350; *Fitzhugh* v. *Jackson,* 132 Miss. 585; *State* v. *McKelvey,* 301 Mo. 1; *Willison* v. *Cooke,* 54 Col. 320. In some of the latter group of cases question has been raised as to whether legislative authority has been given to make the zoning regulation there in question, but the cases appear to stand for the broad principle that such regulations, even when author-

ized, do not represent a legitimate exercise of police power.

In view of the broad power given to cities in our enabling act to establish so-called use districts and in view of the provisions common to zoning regulations authorized in other jurisdictions we think it may be said fairly that it was the intent of the General Assembly to authorize the establishment of residential districts in which only dwellings for one or two families should be permitted and from which apartment houses should be excluded. The matter before us distinctly presents the question whether in authorizing such a classification of and restriction upon the use of land for residential purposes the General Assembly has gone beyond the bounds of a reasonable exercise of the police power. The propriety of such a classification of residential districts is not as clear to us as is that of the exclusion of trade and industry from the sections devoted to residence. It may tend to promote the satisfaction of, or the pecuniary interest of those owners of land, who prefer to use it for one or two family dwellings only, and wish to have the neighboring property conform to the same plan. Such a separation of one or two family dwellings from apartment houses may perhaps enhance the architectural beauty and attractiveness of some residential sections of the city. But private advantage or purely asthetic considerations do not supply sufficient basis for the exercise of the police power. It has, however, been the position of this court, frequently expressed, that "if a state of facts could exist which would justify legislation it is to be presumed that it did exist". *Opinion to the Governor*, 24 R. I. 603; *State* v. *Narragansett*, 16 R. I. 424. In *Cleveland* v. *Tripp*, 13 R. I. 50, the court said: "Our conclusion is that the complainants are not entitled to relief. We have reached this conclusion not without much hesitation but in obedience to the rule that a statute duly enacted however questionable it may be in point of constitutionality is not to be pronounced void for unconstitutionality until the court is clearly convinced of it."

The General Assembly in permitting the creation of a residential district from which apartment houses may be excluded was passing upon a matter of legislative policy. The legislature, with some ground of reason, may have determined that in such districts the public safety would be promoted by lessening the peril from fire; that by restricting to a certain extent the congestion of population the public health would be promoted; the danger from the spread of contagious diseases would be decreased, and that these circumstances of particular benefit to the residents of that district would indirectly inure to the public good of the

(4) community as a whole. Not without some hesitation we have reached the conclusion that the authority granted to the cities to establish residential districts from which apartment houses may be excluded was within the power of the General Assembly and should not be nullified by this court. We cannot say that the respondent at bar has established beyond a reasonable doubt that the provision in question has no just relation to a legitimate exercise of the legislative power; and that burden is upon him when he attacks the constitutionality of the provision. *East Shore Land Co.* v. *Peckham,* 33 R. I. 541, at 548. That authority may properly be granted to exclude apartment houses from districts set apart for dwellings designed for one or two families only is supported by the following cases, *Wulfsohn* v. *Burden,* (N. Y.) 150 N. E. 120; *Brett* v. *Building Commission,* 250 Mass. 73, this case approved a zoning provision establishing "a single-family resident district"; *Miller* v. *Board of Public Works,* (Cal.) 234 Pac. 381; *State* v. *Houghton,* (Minn.) 204 N. W. 569. In the last case the Supreme Court

(5) of Minnesota apparently changed its former position, which had been adverse to the validity of zoning regulation as an exercise of police power (*State* v. *Houghton,* 134 Minn. 226).

The question is not before us as to the reasonableness and validity of the zoning ordinance of Providence as it relates to the premises at 54 Halsey street in that city. The General Assembly has delegated its police power in this

matter to the city. The Superior Court, after giving due consideration to the discretion which has been placed in the city council, will pass upon the reasonableness of the exercise of that power as it affects the property of this respondent, after all the facts are presented to that court at the hearing upon the bill, answer and proof.

Upon the question certified to us our decision is that Chapter 57, General Laws 1923, as amended by Section 1, Chapter 430 of the Revised Public Laws of 1923, is not in violation of the provisions of Article XIV amend. of the federal constitution or of Sections 10 and 16, Article I of the Constitution of Rhode Island in so far as said amended chapter of the General Laws has relation to the matters involved in this suit.

The papers in the cause will be sent back to the Superior Court with this decision certified thereon.

*Francis D. McManus, Herbert E. Eklund, Asst. City Solicitors, Elmer S. Chace, City Solicitor,* for complainant.

*Alexander L. Churchill, Wilson, Churchill & Curtis,* for respondent.