32 N.J. Super. 585 (1954)
108 A.2d 865
JOSEF JOSEFOWICZ, PLAINTIFF-APPELLANT,
v.
WILLIAM S. PORTER, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 1, 1954.
Decided November 4, 1954.
*587 Before Judges EASTWOOD, GOLDMANN and SCHETTINO.
Mr. Irving I. Jacobs argued the cause for appellant.
Mr. Isaac C. Ginsburg argued the cause for respondent (Mr. Harry A. Gaines, attorney).
*588 The opinion of the court was delivered by GOLDMANN, J.A.D.
Plaintiff appeals from a judgment of dismissal entered in the Atlantic County District Court in favor of defendants, and from the court's refusal to grant a new trial.
The parties entered into a contract on May 25, 1953 whereby defendants agreed to sell to plaintiff for $10,000 certain premises on Central Avenue, Lynwood, New Jersey, consisting of 4 1/2 acres of land on which were located a residence, five chicken houses and a barn, together with certain equipment used in raising chickens. Plaintiff made a down payment of $1,000. Subsequently, the parties ascertained that the Lynwood zoning ordinance prohibited the use or occupancy of these premises as a poultry and egg farm. Plaintiff demanded the return of his down payment, and being refused, brought suit in the district court. After a full hearing the trial court entered the judgment of dismissal here under appeal. Plaintiff's motion for a new trial was denied.
Although the testimony was taken down stenographically, none of it is set out in the appendix. Nor is the entire contract made available to us, except for those paragraphs giving the names of the parties, description of the property sold and selling price, and the paragraphs hereinafter quoted. We do not have before us such parts of the record as are essential to the proper consideration of the issues, R.R. 1:7-1(f), and are therefore seriously circumscribed in resolving such essential matters as intention of the parties, the present non-conforming use of the premises, and a construction of the contract read as a whole. However, defendant has made no motion to suppress plaintiff's brief and appendix or to dismiss the appeal for failure to comply with the rule. Nor has defendant supplied the deficiencies of which he presently complains. The appeal having been fully argued, we will proceed to dispose of it on the merits.
The agreement in question provided that:
"4. The title to be delivered shall be a marketable title and insurable by said title company and shall be free and clear of all encumbrances *589 including municipal liens and assessments and liability for assessments for improvements now constructed (except as herein stated), this clause to be operative as of the date of this agreement, and the title is to be subject to all existing restrictions of record, the seller, however, guarantees that there are no restrictions in any conveyance or plans of record affecting the said premises, which will prohibit the use and/or occupancy thereof as dwelling and poultry and egg farm. * * *
5. In the event that such title cannot be made by the Seller as above, and the Buyer is unwilling to accept such title as the Seller can make, then at Buyer's option, the above payment or payments shall be returned to the Buyer, together with the reasonable expenses of examining the title and making survey, or the Buyer may prosecute any legal or equitable action to which the Buyer may be entitled. * * *"
For lack of a complete appendix, we do not know whether the parties expressly bargained for the sale of the premises to be used presently for a poultry and egg farm. Such would appear to have been the purpose from a reading of the fourth paragraph of the agreement. And although we have no record to show that defendants were using the premises as a poultry and egg farm at the time the agreement was executed, counsel on the argument indicated that such was the case and that the use was a non-conforming use predating the passage of the ordinance, and therefore one that was continued and could in the future be continued under the ordinance.
The complaint filed in the district court clearly indicates that plaintiff was proceeding on the ground of defendants' misrepresentation as to the use to which the premises could in the future be put. Thus, the complaint sounded in rescission, an equitable action not cognizable in the district court. That court is a statutory tribunal upon which has been conferred jurisdiction over actions of a civil nature at law only. N.J.S. 2A:6-34. Admittedly, plaintiff was unable to prove legal fraud. The court nevertheless proceeded to consider the action as one for breach of contract  i.e., breach of the guarantee contained in paragraph 4 of the agreement, and this without formal amendment of the complaint. The case having been tried on the theory that it was one to recover damages in an amount not exceeding $1,000, we shall proceed to dispose of the appeal in that light.
*590 A restriction imposed by legislative or municipal authority is not generally considered such an encumbrance as may be availed of by the vendee to avoid his agreement to purchase. 55 Am. Jur., Vendor and Purchaser, § 250, p. 705; Lincoln Trust Co. v. Williams Building Corp., 229 N.Y. 313, 128 N.E. 209 (Ct. App. 1920); and cf. Moyer v. DeVincentis Const. Co., 107 Pa. Super. 588, 164 A. 111 (Sup. Ct. 1933). The guarantee contained in the agreement aside, the almost universal rule is that where a person agrees to purchase real estate which, at the time, is restricted by laws or ordinances, he will be deemed to have entered into the contract subject to the same and cannot thereafter be heard to object to taking title because of such restrictions. Lincoln Trust Co. v. Williams Building Corp., 229 N.Y., at page 318, 128 N.E., at page 210.
However, we are here dealing with the specific language of the guarantee. The guarantee originally contained only the provision that title was to be subject to all existing restrictions of record, but plaintiff insisted that the clause immediately following be inserted, by which defendants guaranteed that there were "no restrictions in any conveyance or plans of record affecting the said premises which will prohibit the use and/or occupancy thereof as dwelling and poultry and egg farm." The language of that clause must therefore be interpreted most strongly against plaintiff at whose insistence it was written into the contract.
As noted, because of lack of record and the failure to present the entire contract, we have no key to what the exact intention of the parties may have been. We must therefore fix our attention upon the fourth paragraph of the agreement. Certain primary rules of interpretation come to our aid: technical terms or words of art will be given their technical meaning, unless the context or local usage shows a contrary intention; the writing will be read as a whole, and every part will be interpreted with reference to the whole and, if possible, be so interpreted as to give effect to its general purpose. 3 Williston on Contracts (rev. ed. 1936), § 618, p. 1777 et seq.
*591 Clearly, the ordinance cannot be considered as falling within the description, "restrictions in any conveyance * * * of record." Does it fall within the category of "restrictions in any * * * plans of record" affecting the premises? We think not.
It will be noted that the fourth paragraph of the agreement deals with title to the premises. We must read "title" in connection with the words "plans of record," pursuant to the ancient maxim of "noscitur a sociis" which summarizes the rule both of language and of law that the meaning of words may be indicated or controlled by those with which they are associated.
The word "record," when used in connection with "title," is ordinarily applied to public records only. "Public record" has been defined as
"* * * one required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done, or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office. The elements essential to constitute a public record are * * * that it be a written memorial, that it be made by a public officer, and that the officer be authorized by law to make it; * * *." (76 C.J.S., Records, § 1, p. 112)
Public records are usually associated in the law of conveyancing as those to be found in the office of the county clerk or register of deeds, judgments of record, and the like. We know of no law which requires that zoning ordinances be recorded in the county clerk's office or in any other office of record, nor are they in this State ever filed in a public record office. Upon adoption, such ordinance is filed with the municipal clerk and preserved by him as a permanent record of local legislation. Such an ordinance would therefore not appear in the course of making the usual title search.
We cannot pervert the meaning of "restrictions in any * * * plans of record affecting the said premises" to *592 include the zoning ordinance of the City of Lynwood. A zoning ordinance is not a "plan of record."
It has been mentioned that the clause in question was inserted in the agreement at the plaintiff's insistence. To obtain the protection he now seeks against the zoning ordinance, he could have and should have insisted upon appropriate language that defendants guaranteed against any restriction upon the contemplated use of the premises by any municipal ordinance. We cannot rewrite the agreement to provide the protection which the plaintiff failed to obtain for himself.
The judgment is affirmed.