[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from a decision of the Zoning and Platting Board of Review for the Town of Narragansett (hereinafter "Zoning Board"). Jurisdiction in this Superior Court is pursuant to G.L. 1956 (1988 Reenactment) § 45-24-20, as amended.
Mr. and Mrs. DiBiasio (hereinafter "defendants") own lots 599 and 600 on Assessor's Plat N/S in the Bonnett Shores area of Narragansett. The two lots together have an area of approximately 17,400 square feet and frontage of 145 feet and are located in a R-20 residential neighborhood. The defendants' single family home is located entirely on lot 600, while lot 599 contains a driveway but is otherwise vacant. Hope G. LaSalle, Peter N. LaSalle, and Faith A. LaSalle (hereinafter "plaintiffs") are owners of lot 595 which is improved with a one story ranch house, and lot 601 which is unimproved land. Colonel John Gardiner Road separates the land owned by the plaintiffs and the defendants.
In August of 1989, the defendants filed with the Narragansett Town Hall their application for a special exception or variance. The application sought a special exception pursuant to Section 3.4.2 of the Narragansett Zoning Ordinance for the construction of a 20' x 22' detached boathouse on Lots 599 and 600. After two public hearings on the defendants' application, the Zoning Board, by decision dated October 15, 1990, granted the defendants a 10-foot side yard variance from Sect. 5.2 of Chapter 246 of the Zoning Ordinance and a special exception and 62-foot variance from the limit of disturbance to a coastal feature in a "coastal resources overlay district" as set forth in Section 3.4 of Chapter 246. (See Zoning Board's Decision, Defendants' Exhibit A).
In that decision the Zoning Board made findings indicating that the granting of the requested relief would: "comply with all applicable requirements for development and performance standards of the Zoning Ordinance; be in harmony with the general purpose and intent of this ordinance; substantially serve the public welfare; and not create conditions inimical to public health, safety, morals and general welfare."
From that Zoning Board decision, this appeal followed.
The standard of review which this Superior Court must apply to appeals of decisions of local zoning boards is set forth in G.L. 1956 (1988 Reenactment) § 45-24-20, as amended. That section reads as follows:
 45-24-20. Appeals to Superior Court [Repealed effective July 1, 1993.]
 (d) The court shall not substitute its judgment for that of the zoning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are: (1) in violation of constitutional, statutory or ordinance provisions; (2) in excess of the authority granted to the zoning board by statute or ordinance; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In reviewing a zoning board decision, the Superior Court ". . . is not empowered to substitute its judgment for that of the zoning board if it can conscientiously find that the board's decision was supported by substantial evidence in the whole record." Apostolou et al. v. Genovesi et al., 120 R.I. 501, 507, 388 A.2d 821, 825 (R.I. 1978). Substantial evidence has been defined as "relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means in amount more than a scintilla but less than a preponderance." Caswell v.George Sherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981);Apostolou et al v. Genovesi et al, 120 R.I. at 507, 388 A.2d at 825 (R.I. 1978).
The plaintiffs argue first that the Zoning Board acted in excess of its powers, violated ordinance provisions and acted arbitrarily in granting the defendants' requested relief because a boathouse is not a designated structure or a permitted use. The plaintiffs are correct in stating that the Narragansett Zoning Ordinance does not provide for the building of a boathouse in a R-20 residential neighborhood. The zoning ordinance does, however, provide for the building of accessory structures. Section 6.4.1 of the Narragansett Zoning Ordinance reads as follows:
 "1. Definitions. For purposes of this section, accessory buildings and structures shall include but not be limited to: unlighted tennis and paddle tennis courts, swimming pools, garages for passenger or commercial vehicles, greenhouses, playhouses, garden houses, toolhouses, stables, barns, solar energy collectors, and studios."
The plaintiffs argue that since boathouses are not specifically included in this section, they are necessarily excluded from being accessory structures. The defendant, however, properly points out that this definition contains a list of common accessory structures but does not exclude all other uses as evidenced by the ordinance language ". . . but not limited to." The record makes it clear that although this structure was referred to several times as a "boathouse," the Zoning Board deemed it to be an accessory structure. The Narragansett Town Solicitor, when asked by the Board if the proposed structure was an accessory structure, responded: "You're right, it is an accessory structure. At least it appears to fit the definition, accessory structures." (Tr. 2-3). Subsequently, the Town Solicitor stated before the Zoning Board:
. . . The issue is accessory structure, whether it's to be used to store cars, boats, airplanes, or motorcycles. I just want it to be clear. Because if he uses it to store cars the issue is going to end up in my lap. It's an accessory structure if granted by the Board which can be used for any lawful purpose as an accessory structure. That can include boats, cars, anything that's within the lawful storage regulations. If it's called a boathouse for whatever respect or reason that's not applicable as far as the Ordinance. (Tr. 25).
The plaintiffs argue further that the defendant was not entitled to the requested relief pursuant to Section 13.5(d) of the Narragansett Zoning Ordinance which provided: "No major recreation vehicle, boat or equipment shall be stored in any front yard or minimum side yard." That section has since been amended to apply only to the outside storage of boats, but it does not apply to the case at bar as it was amended after the Zoning Board's decision in October, 1990. Even prior to the amendment, a plain and clear meaning of this section is that the ordinance refers to the outside storage of boats and not to the storage of a boat inside a structure as would be the case here.
Next the plaintiffs argue that the Zoning Board acted arbitrarily and in excess of its powers in granting a special exception and a 62-foot variance from Section 3.4 of Chapter 246, Coastal Overlay District.
The Zoning Board's power to grant a special exception emanates from R.I.G.L. 1956 (1988 Reenactment) which provides boards of review the power "to hear and decide special exceptions to the terms of the ordinance, upon which such board is authorized to pass under such ordinance." The Zoning Board's power, however, is actually limited by the provisions of the respective ordinance which provide for special exceptions — either via the zoning ordinance's very general authorizing language (i.e. "reasonably necessary for the convenience and welfare of the public," Dean v. Zoning Board of Warwick,120 R.I. 825, 829, 390 A.2d 382 (1978)) or via the types of exceptions specifically enumerated in sections of the ordinance. With respect to a zoning ordinance that very generally bears the "public convenience and welfare" standard for obtaining a special exception, the Court has further defined this standard as requiring that ". . . an applicant for a special exception must introduce competent evidence that neither the proposed use nor its location on the site would have a detrimental effect upon public health, safety, welfare and morals." V.S.H. Realty, Inc.v. Zoning Board of East Greenwich, 120 R.I. 785, 790,390 A.2d 378 (1978) (Quoting Hester v. Timothy, 108 R.I. 376, 385-6,275 A.2d 637, 641-42 (1971)).
Section 3.4.2 of the Narragansett Zoning Ordinance gives the Zoning Board the power to grant a special exception following a site plan review and approval for the construction of structures in the coastal resources overlay district. Section 3.4.1 of the Zoning Ordinance states, "It is the public policy of Rhode Island and the town to preserve, protect, develop, and restore coastal resources and their ecological systems in the interests of the public health, safety, and general welfare of the community."
The plaintiffs argue that the Board was without evidence to support its finding that the requested relief was not injurious to public health, safety or welfare. A review of the record indicates that there was substantial evidence before the Zoning Board to support its decision to grant the special exception.
The site plan submitted to the Zoning Board was prepared by Mr. Blink, a duly licensed architect with fifteen (15) years of experience. (Tr. 5). The plan was drawn to scale, contained extensive topographic information, and adequately depicted the existing structure as well as the location of the proposed structure. (See Defendants' Exhibit B). The plaintiffs argue that the site plan was deficient for not containing surveyed data. The Town Solicitor stated to the Zoning Board, however, that:
 [the] site plan requirement does not say have a surveyed site plan. As long as it passes review, and there's enough detail, and enough known boundaries, and the dimensions are the same, when construction starts that's when the field check begins as to where the actual building is set. (Tr. 28-9).
Furthermore, the testimony of Mr. Blink also supports the Zoning Board's decision. Mr. Blink testified that if the Zoning Board granted the defendants' requested relief, the location of the structure would be consistent with erosion control, and would provide the neighbors with a more open view. (Tr. 6). Additionally, Mr. Blink provided the Board with extensive testimony regarding the topography of the lots, including elevations and slope estimations. (Tr. 6-8). The Zoning Board inquired further about the plaintiffs' view and Mr. Blink assured the Board that the proposed structure would not obstruct the plaintiffs' view of the water. (Tr. 9-10).
The plaintiffs argue that the proposed structure poses a traffic safety hazard due to the nature of the roads in the area. The only evidence the plaintiffs offer to support their position, however, is the testimony of Peter LaSalle and Hope LaSalle who are neighboring landowners and plaintiffs in this case. Our Supreme Court has stated, "that the lay judgments of neighboring property owners on the issue of the effect of the proposed use on neighborhood property values and traffic conditions have no probative force in respect of an application to the zoning board of review for a special exception." Toohey v. Kilday,415 A.2d 732, 737 (R.I. 1980). Furthermore, where a special exception is being sought, it is necessary for the opponents to present expert testimony on the issue of whether such special exception poses a traffic safety hazard and is thereby injurious to the public welfare. See Salve Regina v. Zoning Board of Review,594 A.2d 878, 881-82 (R.I. 1991) (lay witnesses not allowed to testify as experts; their opinions are not probative evidence).
The evidence before the Board indicated that the boat was not going to be towed in and out of the structure on a frequent basis but was going to be stored for the winter and taken out in the spring. Thus, the Board did not abuse its discretion in not finding the structure to be a safety hazard and granting the special exception.
The plaintiffs also argue that the special exception would violate Section 13.1 of the Narragansett Zoning Ordinance. That section provides that "any main structure or use erected, added to, or developed after the passage of this ordinance must provide a permanently maintained off-street parking facility," and in the case of a dwelling, of "one car for each bedroom with the minimum of two car spaces for each dwelling unit." In compliance with Section 13.1, the defendants' four bedroom house has four parking spaces. The plaintiffs argue that construction of the boathouse will eliminate one or more of these parking spaces. The Town Solicitor stated to the Zoning Board, however, that there remained plenty of room for parking. (Tr. 36) Also, a review of the site plan presented to the Board indicated that there would be ample parking available at the defendants' residence.
Accordingly, the Zoning Board, after review of the testimony and exhibits found "that the use proposed in the granting of the relief requested will not create conditions inimical to public health, safety, morals, and general welfare." (See Zoning Board's Decision, Defendants' Exhibit A). Thus, the Board did not abuse its discretion or exceed its powers in granting the defendants a special exception from Section 3.4 of the Narragansett Zoning Ordinance.
It is important to recognize that the 62-foot intrusion into the coastal overlay district granted to the defendants by the Zoning Board is relief pursuant to the special exception from Section 3.4 of the Narragansett Zoning Ordinance. As Section 3.4 provides that the zoning board may grant a special exception for the construction of structures in "areas contiguous to shoreline features extending inland for two hundred (200) feet," the defendants' requested relief here constitutes a request for a special exception from Section 3.4. Accordingly, the 62-foot intrusion is not a deviation and shall not be scrutinized under the Viti standard. See Felicio v. Fleury, 557 A.2d 480 (R.I. 1989) (a "deviation is relief from restrictions governing a permitted use such as lot-line setbacks, limitations on height, on-site parking, and minimum frontage requirements.")
It is a well settled rule of law that:
 The so-called deviation affords relief from provisions that govern area and setback restrictions and comes into play only when the project involves a permitted use. It is not available in a situation in which the use is granted by way of a special exception. Verdecchia v. Johnston Town Council, 589 A.2d 830, 832 (R.I. 1991): Northeastern Corp. v. Zoning Board of Review, 534 A.2d 603, 605 (R.I. 1987).
Thus, the Zoning Board properly found that the construction of the structure with a 62-foot intrusion into a coastal overlay district would not be inimical to public health, safety, morals and general welfare.
In order to insure compliance with the Zoning Ordinance and the development standards applicable to development in a coastal overlay district as mandated by Section 3.4, the Zoning Board placed the following conditions on the granting of relief to the defendants: 1) that construction be made in strict compliance with the plans submitted to and duly approved by the Board; 2) that a row of stake hay bales be placed on the property as shown on the site plan for erosion control; 3) that Lots 599 and 600 on Assessor's Plot N/S merge to form a single lot; and 4) that the property be surveyed and staked out prior to construction. Moreover, the Board's decision was rendered after the members of the Zoning Board visited the property to view the site of the proposed construction. (See Zoning Board's Decision, Defendants' Exhibit A).
Also before the Court is the Zoning Board's decision to grant the defendants a 10-foot side yard variance from Section 5.2 of the Narragansett Zoning Ordinance. That section, entitled "Dimensional Regulations, requires a 20-foot side yard setback for property in a R-20 zoning district. Since that section prescribes dimensional regulations and not permitted uses, the 10-foot variance granted by the Zoning Board was a "Viti variance," not a "true variance." See Viti v. Zoning Board ofReview of the City of Providence, 92 R.I. 59, 65, 166 A.2d 211
(1960) (the "Viti variance" offers relief not from uses permitted for a particular piece of property as a "true variance" does, but from the regulations that govern the enjoyment of that permitted use.).
It has been stated by our Supreme Court, however, that "theViti rule applies only where the relief sought is for a permitted use, never where the applicant seeks both a deviation and a special exception, as petitioner does in this case."V.S.H. Realty Inc. v. Zoning Board of Review, 120 R.I. 785, 792, 390 A.2d 378 (R.I. 1978). Moreover, the Supreme Court has emphatically rejected the argument that a "conditionally permitted use, which is a euphemism for a use permitted by means of a special exception, is synonymous with the phrase "permitted use" for purposes of applying the Viti rule." Id. at 792. Thus, the Zoning Board could not legally grant the defendants in this case a 10-foot side yard deviation.
Additionally, G.L. 1956 (1991 Reenactment) § 45-24-41(C)(4) provides that in granting a variance, the zoning board of review shall grant the least relief necessary. Here, the Zoning Board was without substantial evidence to grant the 10-foot side yard deviation. The defendants' own witness, Mr. Blink, stated that the structure could be sited to conform with the side yard setbacks. (Tr. 13). Essentially, the Zoning Board abused its discretion and exceeded its authority in granting the defendants a 10-foot side yard variance where its decision to do so was legally and factually without support.
After review, this Court finds that the decision of the Zoning and Platting Board for the Town of Narragansett with respect to its granting of a special exception in a coastal overlay district from Section 3.4 of the Narragansett Zoning Ordinance is supported by reliable, probative, and substantial evidence of the whole record and is not clearly erroneous. However, this Court finds the Zoning Board's grant of a 10-foot side yard variance was without substantial evidence to support its position and constituted an abuse of the Zoning Board's discretion. Accordingly, the Zoning Board's grant of a special exception from Section 3.4 is affirmed and its grant of the 10-foot side yard variance is reversed.
Counsel will prepare and submit an appropriate judgment for entry by the Court within ten (10) days.